2012 OK CIV APP 105

Todd DEAN, the Dean Group, LLC, William Snipes, Roger Rock, Sterling Management Group, LLC, Joe Strunk, Guy Strunk, Alexander & Strunk, Inc., and Lance P. Morton, Plaintiffs/Appellants,

v.

STATE of Oklahoma ex rel. John DOAK, Oklahoma Insurance Department, Defendant/Appellee.

No. 110,214.

Court of Civil Appeals of Oklahoma, Division No. 2.

July 26, 2012.

Rehearing Denied Sept. 7, 2012.

Kenneth T. McConkey, Klingenberg & Associates, P.C., Oklahoma City, Oklahoma, and Douglas A. Rice, Derryberry & Naifeh, LLP, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Kelley C. Callahan, Oklahoma Insurance Department, Oklahoma City, Oklahoma, for Defendant/Appellee.

R. Thompson Cooper, Pignato, Cooper, Kolker & Roberson, P.C., Oklahoma City, Oklahoma, for Amicus Curiae Independent Insurance Agents of Oklahoma.

JANE P. WISEMAN, Judge.

¶1 Plaintiffs Todd Dean, Dean Group, LLC, William Snipes, Roger Rock, Sterling Management Group, LLC, Joe Strunk, Guy Strunk, Alexander & Strunk, Inc., and Lance P. Morton appeal the trial court's order granting the motion to dismiss due to lack of subject matter jurisdiction filed by Defendant State of Oklahoma *ex rel.* John Doak, Oklahoma Insurance Department (OID). This appeal is governed by Supreme Court Rule 1.36, 12 O.S.2011, ch. 15, app. 1, and proceeds without appellate briefing. After review of the record on appeal and authorities on the issues presented, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶2 According to their amended petition for declaratory judgment, Plaintiffs obtain malpractice insurance for surgeons and physicians and obtain "other lines of insurance for non-medical clients." Plaintiffs apparently were informed by existing and potential clients that other insurance brokers/producers "offered to provide non-insurance related services, for which they normally charge and receive payment to these clients either at no cost, or at a significantly reduced cost, in order to obtain their insurance business." The "non-insurance related services include assisting the clients with collecting and verifying their credentialing information, the renewal of their third party payer contracts and renewing and/or obtaining medical facilities privileges for the clients." Unless Plaintiffs can match the provision of "these credentialing services, either through actually providing the service or through reducing the cost of the insurance and/or reducing Plaintiffs' sales commission, the clients will place their insurance through these other insurance brokers/producers and the Plaintiffs will lose their insurance business." Plaintiffs allege the provision of these services amounts to an unfair method of competition or an unfair or deceptive insurance business practice "in that it would constitute an unlawful 'rebate' that is prohibited under the Oklahoma Insurance Code."[1]

---

1. Plaintiffs cite 36 O.S.2011 § 1204(8)(a) of the Insurance Code as law governing what constitutes an unlawful, prohibited rebate:

    8. Rebates. (a) Except as otherwise expressly provided by law, knowingly permitting or offering to make or making any contract of insurance or agreement as to such contract other than as plainly expressed in the contract issued thereon; or paying or allowing, or giving or offering to pay, allow or give, directly or indirectly, as inducement to any contract of insurance, any rebate of premiums payable on the contract, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract; except in accordance with an applicable rate filing, rating plan or rating system filed with and approved by the Insurance Commissioner; or giving or selling or purchasing or offering to give, sell, or purchase as inducement to such insurance, or in connection therewith, any stocks, bonds or other securities of any company, or any dividends or profits accrued thereon, or anything of value whatsoever not specified in the contract or receiving or accepting as inducement to contracts of insurance, any rebate of premium payable on the contract, or any special favor or advantage in the dividends or other benefit to accrue thereon, or any valuable consideration or inducement not specified in the contract.

    Although the version of § 1204 under which this case was decided has been superseded effective

¶ 3 In a December 1, 2009, letter, Plaintiff Dean set forth his concerns regarding the provision of the credentialing services and requested OID's written interpretation of the Oklahoma Insurance Code regarding this practice. In a response letter dated December 3, 2009, OID informed Plaintiff Dean that the information mailed to him in OID's October 2009 "Ridgeway letter" is the "Department's current position on this issue" and that the information would soon be "publicized in a bulletin on [the Department's] website." OID further stated that "the bulletin will address the Department's current position on the value added services questions posed in [Plaintiff's] letter" which will be mailed to Plaintiff once it is finalized "which should be no later than next week."

¶ 4 Plaintiffs assert OID never issued the bulletin despite Plaintiffs' efforts to follow up with OID as to when they could expect the forthcoming bulletin. Because OID never issued any written guidance on the issue, Plaintiffs in December 2010 requested a hearing before OID on the issue. OID denied Plaintiffs' request for a hearing.

¶ 5 In March 2011, Plaintiffs brought a declaratory judgment action in Oklahoma County district court stating that based "upon information and belief, the OID has informally advised certain insurance producers/brokers that it will not prohibit the practice of providing the 'credentialing services' and/or that it will not enforce the Code provisions which prohibit 'rebating' with regard to the provision of these credentialing services."

¶ 6 Plaintiffs filed an amended declaratory judgment action after obtaining a copy of a letter dated April 20, 2011, from OID's General Counsel. According to Plaintiffs, the letter approves:

a scheme whereby an Oklahoma insurance agency may lawfully participate in an arrangement with a third-party physician credentialing service whereby the third-party credentialing service provider offers a discount on physician credentialing services to customers of the Oklahoma insur-

November 1, 2012, this subsection remains unchanged. *See* 2012 Okla. Sess. Law Serv. 478 (West).

ance agency if said agency has purchased data from the third-party credentialing service pertaining to such customers.

Plaintiffs argue OID's informal opinion in the April 2011 letter misinterprets 36 O.S.2011 § 1204(8)(b)(6). In their declaratory judgment brief in chief, Plaintiffs ask the trial court to address the following question:

Is it unlawful, whether as an inducement, rebate, or unfair business practice, under the Oklahoma Insurance Code for insurance brokers/producers to provide credentialing services, directly or indirectly, to their insureds for free or at a reduced cost, in light of Title 36 O.S. § 1201, 1203, 1204, 1435.30(I), and/or 1435.2(6)? [2]

¶ 7 Defendant filed a combined motion to dismiss and response to Plaintiffs' declaratory judgment brief. Defendant requested dismissal of Plaintiffs' action because (1) "there is no jurisdiction over this action under the Oklahoma Declaratory Judgment Act as Plaintiffs request a prohibited advisory opinion," (2) "it asks that the court impermissibly interfere with the discretion of a state agency," and (3) "Plaintiffs lack standing to bring the action." Defendant later supplemented its brief arguing that because "the acts at issue are not performed by an entity engaging in the business of insurance, [36 O.S. § ] 1204 does not apply." In response, Plaintiffs argue they do not seek a prohibited advisory opinion, do not challenge a discretionary act of a state agency, and have standing to bring the action.

¶ 8 The trial court granted Defendant's motion to dismiss finding that it lacked subject matter jurisdiction over Plaintiffs' claims.

¶ 9 Plaintiffs appeal.

## STANDARD OF REVIEW

¶ 10 The question of whether a trial court has subject matter jurisdiction presents a question of law. *Williams v. Board of Oklahoma Polygraph Exam'rs*, 2010 OK CIV

**2.** The Independent Insurance Agents of Oklahoma with trial court permission submitted an amicus curiae brief in support of Plaintiffs' position in this matter.

APP 100, ¶ 8, 241 P.3d 654, 656. We review questions of law *de novo*. *In re Hyde*, 2011 OK 31, ¶ 8, 255 P.3d 411, 414. The appellate courts have plenary authority to examine questions of law independently and without deference to the trial court's decision. *Eagle Bluff, L.L.C. v. Taylor*, 2010 OK 47, ¶ 9, 237 P.3d 173, 178.

## ANALYSIS

¶ 11 The dispositive issue on appeal is whether the trial court correctly granted Defendant's motion to dismiss for lack of subject matter jurisdiction in this declaratory judgment action. Title 12 section 1651, which governs declaratory judgment actions, provides in part as follows:

District courts may, in cases of actual controversy, determine rights, status, or other legal relations, including but not limited to a determination of the construction or validity of ... any statute ... whether or not other relief is or could be claimed.... The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make a determination where the judgment, if rendered, would not terminate the controversy, or some part thereof, giving rise to the proceeding.

12 O.S.2011 § 1651.

### I. Advisory Opinion

¶ 12 We first address whether the petition seeks a prohibited advisory opinion rendering the trial court without subject matter jurisdiction. "In order to invoke the jurisdiction of the court under the declaratory judgments act there must be an actual, existing justiciable controversy between parties having opposing interests, which interests must be direct and substantial, and involve an actual, as distinguished from a possible, potential or contingent dispute." *Gordon v. Followell*, 1964 OK 74, ¶ 0, 391 P.2d 242, 242–43 (syl. no. 1 by the Court).

¶ 13 The word " 'justiciable' refers to a lively case or controversy between antagonistic demands. When a party presents for adjudication antagonistic demands that are merely speculative, a prohibited advisory opinion is being requested." *Tulsa Indus. Auth. v. City of Tulsa*, 2011 OK 57, ¶ 13, 270 P.3d 113, 120 (footnote omitted); *see also City of Broken Arrow v. Bass Pro Outdoor World, L.L.C.*, 2011 OK 1, ¶ 32, 250 P.3d 305, 318 ("[J]usticiability is shown by antagonistic demands that are based upon more than merely conclusory allegations or frivolous legal arguments."). Similarly, "when only non-antagonistic demands are presented, there is no 'controversy' and an advisory opinion is being sought." *Tulsa Indus. Auth.*, 2011 OK 57 at ¶ 13, 270 P.3d at 120. An "absence of justiciability requires dismissal of the proceeding." *Id.* at ¶ 13, 270 P.3d at 121. The Oklahoma Supreme Court has linked "the concept of justiciability when declaratory relief is sought with the jurisdiction of the trial court to grant such relief." *Id.*

¶ 14 "[A] plaintiff can successfully bring a declaratory judgment action to test the applicability or constitutionality of a statute." *Independent Sch. Dist. No. 1 of Oklahoma Cnty. v. Scott*, 2000 OK CIV APP 121, ¶ 16, 15 P.3d 1244, 1249. "An action for declaratory relief is an appropriate cause to be brought by a person adversely affected by a statute." *Barzellone v. Presley*, 2005 OK 86, n. 16, 126 P.3d 588. "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Oklahoma Publ'g Co. v. United States*, 515 F.Supp. 1255, 1258 (W.D.Okla. 1981). "Furthermore, the person need not violate the questioned law to obtain a declaration of its validity." *Barzellone*, 2005 OK 86 at n. 16, 126 P.3d 588. The Oklahoma Supreme Court recognizes that a declaratory judgment action "is especially useful in a case where a justiciable controversy between the parties exists and the plaintiff would be required to do or refrain from doing some action at his legal peril." *Conoco, Inc. v. State Dep't of Health*, 1982 OK 94, ¶ 18, 651 P.2d 125, 131.

¶ 15 Plaintiffs are Oklahoma insurance producers/agencies who procure medical malpractice insurance for physicians and sur-

geons and other lines of insurance for non-medical clients. After receiving information that other insurance brokers/producers were offering to provide non-insurance-related credentialing services "for free or for a reduced cost as an inducement to enter into a contract of insurance," Plaintiffs sought a determination from OID as to whether these acts amounted to "unlawful rebating" pursuant to 36 O.S. § 1204. In his December 1, 2009, letter, Plaintiffs' attorney asked OID to issue a written opinion clarifying this issue to allow him "to more completely advise [his] client in the manner in which to conduct his business within the confines of the law." The December 2009 letter clearly establishes that the clarification or answers to Plaintiffs' inquiry would directly affect the way in which the insurance agencies operate their businesses.

■ ¶ 16 A letter written December 17, 2010, to OID from counsel for Plaintiffs Dean and Dean Group, LLC, requested a hearing with OID on the credentialing service issue. In the letter, Plaintiffs state,

> It is our understanding that the OID is aware of the practice and has approved this practice. Dean believes this action by [OID] is an unlawful action of a government agency and fosters and facilitates acts that constitute unfair methods of competition. This action has the clear and immediate potential to hurt Dean competitively.

¶ 17 A review of the record shows Plaintiffs asked OID to formally determine whether the cited acts amount to "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance" and therefore violate 36 O.S.2011 § 1204. The record further shows that Plaintiffs' contentions are definite and concrete, and if the conduct complained of does constitute unfair competition in violation of the statute, then there is a "realistic danger of [Plaintiffs] sustaining a direct injury as a result of the statute's operation or enforcement" as informally interpreted by OID. We thus conclude the petition does not seek a prohibited advisory opinion but presents a justiciable controversy.

## II. Discretionary Act of a State Agency

■ ¶ 18 We must next determine whether Plaintiffs challenge a discretionary act of a state agency. Defendant asserts the Oklahoma Declaratory Judgment Act does not apply to this action which must be dismissed because the Act does not apply to "orders, judgments, or decrees made by ·the State Industrial Court, the Corporation Commission, or any other administrative agency, board or commission of the State of Oklahoma." 12 O.S.2011 § 1657. Defendant further contends that in addition to orders, judgments, or decrees, this provision " 'would also prevent a district court from acting to usurp the authority and responsibility of such commissions to act in the first instance.' " Defendant asserts that OID has the "exclusive authority to decide whether to regulate the conduct about which Plaintiffs complain, or whether to devote the agency's resources to other things like regulating insurance fraud or frivolous denials of insurance claims. It is not the function of the courts to veto or review such decisions."

¶ 19 Plaintiffs counter that because they first sought a formal decision from OID through a request for a hearing which was denied, they have in essence exhausted their administrative remedies and now seek relief by means of a declaratory judgment action. Plaintiffs request the trial court to interpret a statute OID has declined to address. They assert the interpretation is "necessary because the OID has informally interpreted Section 1204 and has communicated this interpretation to some regulated entities in Oklahoma. It is the informal interpretation of the anti-rebating provisions Plaintiffs seek to have construed by [the trial court], and not enforcement against any particular agent or agency."

¶ 20 We conclude that Plaintiffs' action is not barred by § 1657. The informal guidance provided by OID, both verbally and by letter, is only an informal statement of its interpretation of the statute. It does not amount to an "order, judgment or decree." *See Coffey v. Robert McMullan and Son, Inc.*, 1977 OK 195, ¶ 10, 570 P.2d 1152, 1154 (concluding that a letter from State's engineer is "a mere statement of State's interpre-

tation of the terms of the contract, and not an order, judgment or decree, as those terms are used in [section] 1657."). Plaintiffs do not challenge a discretionary act of a state agency such as its decision to refuse holding a hearing in this matter; they seek declaratory relief from the trial court to interpret § 1204, an interpretation OID has declined to formally provide.

### III. Standing

¶ 21 Defendant alternatively argues that if the trial court found the Oklahoma Declaratory Judgment Act applied to this action, the case should be dismissed because Plaintiffs lack standing to bring the lawsuit. Defendant argues that because "Plaintiffs have not alleged that they stand to suffer any injury as a direct result of the Defendant's application of the statute in question," they lack standing to "request an interpretation of that statute as presented in their Amended Petition."

¶ 22 The Oklahoma Supreme Court in *J.P. Morgan Chase Bank, National Association v. Eldridge*, 2012 OK 24, 273 P.3d 62, set forth the elements necessary to establish standing:

> "Standing refers to a person's legal right to seek relief in a judicial forum. The three threshold criteria of standing are (1) a legally protected interest which must have been injured in fact—*i.e.*, suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision. The doctrine of standing ensures a party has a personal stake in the out-

come of a case and the parties are truly adverse."

*Id.* at ¶ 7, 273 P.3d at 65 (quoting *Fent v. Contingency Review Bd.*, 2007 OK 27, ¶ 7, 163 P.3d 512, 519–20). "The adverse [e]ffect must be direct, substantial and immediate, rather than contingent on some possible remote consequence or possibility of some unknown future eventuality." *Toxic Waste Impact Grp., Inc. v. Leavitt*, 1994 OK 148, ¶ 9, 890 P.2d 906, 911. "Only if standing exists must the case proceed to the merits for the reason only one whose substantial rights are injuriously affected may appeal from a decision, however erroneous." *Id.* (citation omitted).

¶ 23 Defendant contends Plaintiffs have no "immediate and substantial" interest and have demonstrated no damages or "that they are subject to any action by [OID]." Defendant thus concludes Plaintiffs only have a "'possible, potential or contingent dispute' which is insufficient to support Plaintiffs' standing to bring the action."

¶ 24 Plaintiffs, on the other hand, assert they have an imminent and concrete injury in fact and they have an "actual or imminent threat of losing insurance clients because Plaintiffs have not agreed to match the offer to provide credentialing services, or to pay for such services directly or indirectly, because they believe such practice is in direct violation of the anti-rebating provisions in the Code." For this reason, Plaintiffs contend they not only have a "stake" in the "outcome of the controversy, [their] very livelihoods are dependent on it." Plaintiffs further argue that if OID "is issuing informal interpretations contrary to the language of Section 1204, that damages all regulated entities believing the interpretation to be incorrect, not just Plaintiffs."[3]

---

**3.** We note a distinction between the facts presented in *Heritage Village Apartments, Ltd. v. Oklahoma Housing Finance Agency*, 2001 OK CIV APP 4, 18 P.3d 1085, and the present case. In the *Heritage Village Apartments case*, Heritage Village Apartments argued that the Finance Agency's grant of certain tax credits to Heritage's competitors created a competitive disadvantage to Heritage from housing built with the benefit of the tax credits. In rejecting this argument as a basis for standing, the Court found that merely claiming "that a governmental action will result in competition harmful to the complainant's business" is not sufficient to establish the complainant's standing to proceed. *Id.* at ¶ 8, 18 P.3d at 1087.

Here, Plaintiffs seek a determination of whether the practices in question violate specific statutory restrictions against rebating as prohibited unfair competitive practices. This question falls squarely within the statutory parameters set forth in the section of the Oklahoma Insurance Code on "Unfair Practices and Frauds" beginning with 36 O.S.2011 § 1201:

¶ 25 As stated above, an action for declaratory relief is appropriately brought by a person adversely affected by a statute who does not have to violate the statute to obtain declaratory relief. *Barzellone v. Presley,* 2005 OK 86, n. 16, 126 P.3d 588. Here, there is a realistic danger of direct injury to Plaintiffs as a result of Defendant's action.

¶ 26 As to the second element of standing, Plaintiffs argue there is a causal connection between the informal interpretation of the statute "and the fact that Plaintiffs' clients will place their insurance through these other insurance brokers/producers that are willing to provide these credentialing services." Finally, any such damages are likely to be remediable by a favorable decision.

¶ 27 We conclude that all three elements of standing have been met. Plaintiffs have demonstrated that they have an imminent and concrete injury in fact, that there is "a causal nexus between the injury and the complained-of conduct," and that it is likely that the injury can be remedied by a favorable decision.

## CONCLUSION

¶ 28 The trial court does have subject matter jurisdiction over this action pursuant to the Oklahoma Declaratory Judgment Act. The decision of the trial court to the contrary granting Defendant's motion to dismiss is reversed, and the case is remanded to the trial court to proceed on the merits of Plaintiffs' declaratory judgment action.

¶ 29 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

FISCHER, C.J., and BARNES, P.J., concur.

## FOOTNOTES

The purpose of this article is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the Act of Congress of March 9, 1945 ... by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.